IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02861-PAB

CELIA GALLEGOS,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

      This matter is before the Court on plaintiff Celia Gallegos' complaint [Docket No. 1], filed on November 3, 2011.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

      On November 8, 2007, plaintiff applied for disability benefits under Title II and Title XVI of the Act.  R. at 17.  Plaintiff alleged that she had been disabled since November 8, 2007.  *Id*.  After an initial administrative denial of her claim, plaintiff testified at a hearing before an Administrative Law Judge ("ALJ") on October 6, 2009.  *Id*.  The ALJ denied plaintiff's claims on January 25, 2010.  R. at 26.

_____

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

The ALJ found that plaintiff had the severe impairments of "myofascial pain, anxiety and history of bipolar disorder." R. at 19. The ALJ found that these impairments did not meet one of the regulations' listed impairments, R. at 20, and ruled that plaintiff had the residual functional capacity ("RFC") to

> [P]erform light work as defined in 20 C.F.R. § 416.967(b) except the work should be simple, unskilled work, with one, two or three step instructions, not work in close proximity to co-workers (meaning that the individual could not function as a member of a team), and minimal direct contact with the public; stand or walk for a total of four hours in an eight hour workday; has no restrictions on sitting; and can perform pushing and pulling motions with upper and lower extremities within the exertional range.

R. at 21. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is not disabled because she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 26. Plaintiff appealed and the Appeals Council declined to assume jurisdiction over this matter. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.

1990).  "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district

court will not "reweigh the evidence or retry the case," but must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met."  *Flaherty*, 515

F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a

ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Fibromyalgia

Plaintiff argues that the ALJ erred at step two in failing to find that her

4

fibromyalgia is a severe impairment.  Docket No. 13 at 5-6.  Defendant counters that,

even if this determination was erroneous, it was harmless because the ALJ found that

plaintiff had the similar severe impairment of myofascial pain and thus proceeded to

step three of the analysis.  Docket No. 17 at 12-14.

> In assessing plaintiff's severe impairments, the ALJ stated:

> The claimant claims she has daily muscle and joint aches and pain. However, in 2006 and 2008, laboratory results were negative for fibromyalgia markers. (Ex. 14F, p. 20, 23).  The consultative examiner noted the claimant reported mild diffuse tenderness to palpation in the trapezius muscles, deltoids, and MCP joints.  (Ex. 7F, p. 2).  She also reported diffuse tenderness to palpation of the thighs and calves. (Ex. 7F, p. 2). However, the consultative examiner did not find any typical tender points associated with fibromyalgia but a rheumatologist found some tender points.  (Ex. 7F, p. 3; 14F, p. 23).  The evidence does not corroborate a diagnosis of fibromyalgia but the undersigned will consider myofascial pain to be a severe impairment.

R. at 19.  In assessing plaintiff's RFC, the ALJ discussed the extent to which plaintiff's

pain limited her functional abilities.  R. at 22.  The ALJ noted examination results

indicating that plaintiff's gait, muscle strength, muscle tone, muscle development,

reflexes, grip strength, range of motion, and coordination were normal.  *Id*.  She cited

evidence that plaintiff did not have tender points at her most recent examination and

that her condition was improving with physical therapy.  *Id*.  The ALJ also considered

the extent to which plaintiff's daily activities were consistent with her reported level of

pain.  R. at 22-23 ("The claimant has described daily activities which are not limited to

the extent one would expect, given the complaints of disabling symptoms and

limitations.  Nonetheless, the undersigned considered the allegations of fatigue and

pain and included appropriate limitations in the residual functional capacity.").  In

formulating plaintiff's RFC, the ALJ limited her to light work involving only simple,

unskilled tasks and to standing no more than four hours in an eight-hour day.  R. at 21.

Fibromyalgia is a "syndrome of chronic pain of musculoskeletal origin but uncertain cause. . . . [D]iagnostic criteria [] include pain on both sides of the body, both above and below the waist, as well as in an axial distribution . . .; additionally there must be point tenderness in at least 11 of 18 specified sites."  Stedman's Medical Dictionary, at 148730 (27th ed. 2000).  Myofascial pain syndrome is a "chronic pain disorder" in which "pressure on sensitive points in your muscles (trigger points) causes pain in seemingly unrelated parts of your body."  Mayo Clinic staff, definition of Myofascial pain syndrome, January 5, 2012.[2]

An ALJ's error in failing to find a particular impairment severe at step two of the analysis is generally rendered harmless where the ALJ finds that the claimant has other severe impairments and thus proceeds to step three.  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  In determining a claimant's RFC, an ALJ must consider "the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 404.1523; *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the

_____

[2]http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042.

outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).   In the administrative context, harmless error analysis is appropriate "where, based on material the ALJ did at least consider (just not properly), [a reviewing court can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Any error the ALJ might have made in finding that plaintiff's fibromyalgia was non-severe was remedied at subsequent steps of the process.   First, the ALJ found that the plaintiff had other severe impairments and thus proceeded to the next step of the analysis.   *See Carpenter*, 537 F.3d at 1266.   Second, the ALJ found that plaintiff suffered from severe myofascial pain, the symptoms of which are quite similar to fibromyalgia.   Third, in assessing plaintiff's RFC, the ALJ considered the limitations that plaintiff claims result from her fibromyalgia, namely, pain and fatigue, and determined the extent to which they limit her ability to work.   *See* R. at 22.   Plaintiff asserts that, "had the ALJ correctly considered Fibromyalgia to be a severe impairment, it is possible that the ALJ would have considered the RFC at steps four and five differently."   Docket No. 19 at 3.   The ALJ's analysis, in particular the fact that she carefully considered the symptoms of fibromyalgia in her RFC determination, belie this assertion.   In other words, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way," even had she found fibromyalgia to be a severe impairment at step two.   *Allen*, 357 F.3d at 1145.

**D.  Residual Functional Capacity**

Plaintiff argues that the ALJ erred in determining her RFC because she
misstated plaintiff's activities of daily living and accorded weight to the opinions of non-examining medical sources who did not have an opportunity to review the entirety of the record.  Docket No. 13 at 7-9.

                    *1.  Activities of Daily Living*

Plaintiff contends that the ALJ erred in stating that plaintiff's daily activities
include taking care of her cats, taking care of her disabled mother, and performing yard
work.  Docket No. 13 at 7-8.  Defendant counters that, regardless of these errors, there
is substantial evidence in the record supporting the ALJ's determination.  Docket No. 17
at 14-17.

On January 22, 2008, plaintiff completed a function report in which she stated
that she did not take care of any relatives or pets.  R. at 114.  On February 8, 2008,
consulting physician Velma Campbell examined plaintiff.  R. at 188.  Plaintiff told Dr.
Campbell that she was taking four courses and that the previous term, she had earned
a 4.0 grade-point average.  *Id*.

At the administrative hearing, the ALJ asked plaintiff if she had "[a]ny pets in the
home" and plaintiff stated that she had "[s]ome cats."  R. at 39.  The ALJ asked plaintiff
who she lived with and plaintiff said that she lived with her mother and twenty-year-old
sister.  R. at 43.  Plaintiff stated that her mother is disabled.  *Id*.  The ALJ asked who
performs yard work and plaintiff said: "Various people.  Sometimes we'll have my
cousin or somebody come and help us with the yard."  R. at 44-45.  Plaintiff stated that

she was enrolled in junior college from August 2007 through spring 2009, but was

unable to enroll in fall 2009 because she had to take a part-time job in order to pay her

bills.  R. at 35.  Plaintiff stated that, at the time of the hearing, she was working as a

housekeeper in a hotel six or seven days per week for one to four hours per day,

totaling between twenty and twenty-five hours per week.  R. at 36.  She stated that she

drives to work.  R. at 38.

> In discussing plaintiff's daily activities, the ALJ stated:

> Until this fall, the claimant attended classes on a full-time basis at a junior
> college achieving a 4.0 grade point average. (Ex. 7F, p. 1).  The activity level
> of a student includes sitting for hours reading, attending class, and
> completing projects, along with carrying books and supplies across campus.
> Unfortunately, the claimant testified she was unable to financially continue
> with school and obtained a part-time job as a housekeeper at a hotel.  (Cl.
> Testimony).  The vocational expert testified that the claimant's current job is
> light, frequently lifting and carrying up to 10 pounds and occasionally up to
> 20 pounds, with an SVP of 2. (VE Testimony).  Although the work activity did
> not constitute disqualifying substantial gainful activity, it does indicate that
> the claimant's daily activities have, at least at times, been somewhat greater
> than the claimant has generally reported.  Also, she performs household
> chores, cares for her disabled mother, attends to her cats, drives, and has
> a boyfriend.  (Ex. 3E, p. 3; 8F, p.2; Cl. Testimony).  The claimant has
> described daily activities which are not limited to the extent one would
> expect, given the complaints of disabling symptoms and limitations.
> Nonetheless, the undersigned considered the allegations of fatigue and pain
> and included appropriate limitations in the residual functional capacity.

R. at 22-23.

A court reviews the administrative record "to ascertain whether there is evidence

to support the ALJ's decision, regardless of whether [the court] would have reached a

different result based on the record." *Ellison*, 929 F.2d at 536.  The Tenth Circuit has

held that an "ALJ's errors do not require reversal [when] other reasoning already

contained explicitly or implicitly in his decision supplied sufficient grounds for affirmance

notwithstanding the error." *Groberg v. Astrue*, 505 F. App'x 763, 766 n.1 (10th Cir. 2012); *see also Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) ("Despite this error, there is substantial evidence in the record as a whole to support the ALJ's determination that Lax did not provide a *valid* IQ score below 59 as required by severity prong (B) of the listing. . . . As long as substantial evidence supports the ALJ's determination, the [Commissioner's] decision stands.") (internal citation omitted).

     In arriving at his determination, the ALJ considered a number of factors, including the opinions of medical sources, examination results and treatment notes, plaintiff's non-compliance with her medication and failure to consistently follow up on medical referrals, plaintiff's enrollment in school for four consecutive semesters and high grade-point average, plaintiff's ability to sustain a part-time job at a light exertional level, and plaintiff's ability to perform basic household chores and care for herself.  *See* R. at 21-25.  Even absent the ALJ's incorrect findings regarding plaintiff's daily activities, namely, care of her mother, a cat, and the yard, there is substantial evidence in the record supporting the ALJ's conclusion.  *See Ellison*, 929 F.2d at 536.  In particular, the ALJ relied on plaintiff's ability to successfully function as a student over a two-year period of time and on her decision to postpone her studies for a reason other than her claimed disabilities.  *See* R. at 20, 23, and 24-25 ("The claimant is able to function independently by driving a car, going to classes, getting a 4.0, and helping out around the house.").

     Since the evidence in support of the ALJ's decision is otherwise substantial, the ALJ's factual misstatements do not provide a basis for remand.  *See Groberg*, 505 F.

10

App'x at 766 n.1; *see also Lax*, 489 F.3d at 1089.

### 2. *Medical Opinions*

Plaintiff argues that the ALJ erred in "rel[ying] heavily on non-treating, and non-examining medical sources" despite the fact that these sources "did not have access to medical records any more recent than 2007."[3]   Docket No. 13 at 9.   Defendant counters that the ALJ did not err because she considered all of the relevant evidence and the medical record reveals that plaintiff's condition improved after 2007.   Docket No. 17 at 17-19.

On February 8, 2008, Dr. Campbell examined plaintiff and found that her symptoms were consistent with myofascial pain syndrome.   R. at 190.   She opined that plaintiff would be limited to light or sedentary work, requiring standing for no more than four hours a day and lifting or carrying up to twenty pounds for no more than three hours a day.   *Id*.   Dr. Campbell reviewed medical records from June 2006 through July 2007.   R. at 189.

On March 18, 2008, state agency single decision maker Diane Easley completed a Physical Residual Functional Capacity Assessment for plaintiff.   R. at 213.   Ms. Easley opined that plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull without restriction.   R. at 214-17.   She stated that plaintiff's "allegations are found to be partially credible given the medical

---

[3]Plaintiff also contends that the ALJ incorrectly attributed to Dr. Richard Madsen the statement that plaintiff's pace and concentration were adequate.   Docket No. 13 at 8-9.   However, Dr. Madsen's report from his February 11, 2008 evaluation of plaintiff clearly states that her "[p]ersistence and pace were adequate."   R. at 193.

evidence which shows normal motion, strength and gait." R. at 218. She found that Dr. Campbell's restrictions were not supported "with normal motion, strength, gait." R. at 219. She reviewed plaintiff's medical records from March 2007 through February 2008. R. at 220.

The ALJ noted that "claimant's medical providers did not offer any opinions as to the claimant's residual functional capacity." R. at 24. At the hearing, the ALJ asked plaintiff about the minimal medical records in her file and "obtained updated medical records" that she reviewed before issuing her decision. *Id*. The ALJ stated that the "opinion of Dr. Campbell will be given weight because it was based on a review of the records, a function by function assessment, and with knowledge of the Social Security Act laws and regulations." *Id*. She stated that the opinion of the single decision maker "has been assigned some weight" because it "was based upon all the medical records available at the time and knowledge of the Social Security Act laws and regulations." *Id*. The ALJ discussed medical evidence from April 2008, September 2008, December 2008, April 2009, and June 2009. R. at 22 (citing R. at 227, 231), R. at 23 (citing R. at 238, 255), and R. at 23, 24 (citing R. at 223).

An ALJ does not err in according weight to the opinion of a reviewing physician who does not have access to the complete record where the ALJ explicitly considers the medical evidence to which the reviewing physician did not have access. *See Gonzalez v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013) ("And although it is true that Dr. Twombly was privy to only an incomplete record, the ALJ specifically addressed this point in finding that the more recent record evidence failed to establish that Gonzales's conditions had worsened since Dr. Twombly's review. The ALJ did not err in adopting

12

the conclusion that Gonzales could still perform medium exertional work.").

_____The ALJ recognized the absence of opinions from plaintiff's treating physicians before considering the opinions of non-treating physicians. R. at 24.  In addition, she made an effort to obtain the most recent medical records available. R. at 24.  Dr. Campbell's opinion, to which the ALJ gave "weight," was based in part on a physical examination of plaintiff and not solely on her medical record. R. at 189-90.  The ALJ properly considered a number of relevant factors in according weight to this opinion and that of Ms. Easley, including supportability, consistency with the rest of the record, and knowledge of the Social Security regulations. R. at 24; *see* 20 C.F.R. § 404.1527(c)(3), (4), (6).  Moreover, the ALJ explicitly considered the medical evidence from 2008 and 2009 and determined that it did not support additional functional limitations. *See, e.g.*, R. at 22 ("During a December 15, 2008 visit to her primary care provider, the claimant's extremities were noted to be non-tender, with full range of motion and no pedal edema.") (citing R. at 231); *see also id*. ("The evidence demonstrates the claimant's medical condition improved as she did not demonstrate tender points in her most recent exams and had only mild and diffuse tenderness.") (citing R. at 227).

_____The ALJ considered the complete record and provided legitimate reasons for relying on the opinions of Dr. Campbell and Ms. Easley.  Thus, she did not err in formulating plaintiff's RFC.  *See Gonzalez*, 515 F. App'x at 719.

###        E.  Commissioner's Evaluation

_____Plaintiff argues that the Appeals Council erred in failing to reverse or remand the case on the basis of the Functional Capacity Evaluation (Mental) completed by Dr.

Musharraf Nizami on May 26, 2010 and submitted by plaintiff to the Appeals Council on June 22, 2011.  Docket No. 13 at 9-13; R. at 262-64.  Defendant counters that the Appeals Council was justified in finding that Dr. Nizami's evaluation did not undermine the substantial evidence supporting the ALJ's conclusion.  Docket No. 17 at 19-21.

On March 6, 2006, Dr. Nizami examined plaintiff and noted she was "doing better" and her mood was stable.  R. at 175.   He indicated that plaintiff was cooperative; her gait, speech rate, and thought content were normal; her thought processes were intact; she was clear and oriented; her insight and judgment were adequate; her mood was anxious; and her overall condition was improved.  *Id*.

On February 8, 2007, Dr. Nizami examined plaintiff and noted: "Haven't seen her in long time but reports doing okay.  Has stayed on meds . . . . Wants to go to college to do fine arts."  R. at 174.  He noted her condition was stable.  *Id*.  On July 9, 2007, Dr. Nizami examined plaintiff and noted: "Got Art Scholarship going to Otero Community College.  Reports doing okay.  Mood stable.  Periodically forgets to take meds. . . . TSH normal.  Denies suicidal thoughts. . . . No hallucinations.  In a good relationship."  R. at 173.  He noted that her "fund of knowledge" was average and that her condition was stable.  *Id*.  On December 5, 2007, Dr. Nizami examined plaintiff and noted: "Overall doing okay.  Some frustration due to being [illegible] dependent on family.  Sleeping, eating good.  Hallucinations good."  R. at 172.  He noted her condition was stable.  *Id*.

On November 13, 2008, Dr. Nizami examined plaintiff and noted that she was only sleeping five hours a night and was tearful during the meeting.  R. at 224.  On June 11, 2009, Dr. Nizami examined plaintiff and noted that she was "doing okay" and her moods were "more stable."  R. at 223.  He found that her condition was stable.  *Id*.

14

There are no further treatment notes from Dr. Nizami in the record.

On May 26, 2010, Dr. Nizami completed a Functional Capacity Evaluation (Mental) for plaintiff in which he opined that she was markedly limited in her ability to understand, remember, and carry out detailed instructions, to interact appropriately with the public, to accept instructions and criticism from supervisors, and to get along with co-workers or peers; and extremely limited in her ability to maintain attention for extended periods, to adhere to a schedule, to work in proximity to other people without distracting them, to complete a normal workday or workweek, to respond to changes in routine, and to set realistic goals.  R. at 263-64.  He stated that plaintiff had been "Diagnosed w/ bipolar mood D/O, exhibits mood lability, [illegible] hallucinations, extreme depression, & concentration problems."  R. at 264.  He opined that plaintiff had been subject to these limitations since 2004.  *Id*.

Denying plaintiff's request for review, the Appeals Council stated: "In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  R. at 1-2.

Under the Social Security regulations, the Appeals Council will review a case if the ALJ's decision is not supported by substantial evidence.  20 C.F.R. § 404.970(a)(3).  In deciding whether or not to review a case, the Appeals Council must consider "the entire record including the new and material evidence submitted if it relates to the period on or before the date" of the administrative hearing.  *Id*. at § 404.970(b).  If the Appeals Council fails to consider such evidence, the case must be remanded for further review.  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  "But if, as happened

here, the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion." *Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (general practice of Tenth Circuit "is to take a lower tribunal at its word when it declares that it has considered a matter").

Under the treating source rule, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion is not entitled to controlling weight, it must be assessed based on the factors which apply to all medical opinions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). These factors include the length and nature of the relationship with the patient, the supportability of the opinion, the opinion's consistency with the record as a whole, and the medical specialization of the source. *See* 20 C.F.R. § 404.1527(d). "[A] treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

Plaintiff argues that "Dr. Nizami's opinion should have been accorded much greater weight than any other medical opinion in the record" and that according it its proper weight "would clearly make the ALJ's decision 'contrary to the weight of the evidence currently of record,' and warrant a reversal or remand." Docket No. 13 at 12. Plaintiff's argument is based on the fact that Dr. Nizami, a psychiatric specialist, treated her for several years and on her contention that his opinion is supported by his treatment notes. Docket No. 13 at 11.

16

However, the contention upon which plaintiff seeks to rely is faulty.  Dr. Nizami's treatment notes indicate only that plaintiff suffers from bipolar disorder; nowhere do they document the marked and severe limitations recorded on the 2010 form.  On the contrary, they uniformly indicate that plaintiff's thought processes were clear, her insight and judgment adequate, her fund of knowledge average, and her overall condition stable or improving.  *See* R. at 172-75 and 223-24.  The notes do not indicate any assessment of plaintiff's ability to interact with others.  *See id*.  Nor do they document any tests or examinations tending to support the claimed limitations.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Since Dr. Nizami's 2010 opinion is "brief, conclusory and unsupported by medical evidence," *see Bernal*, 851 F.2d at 301, the Appeals Council did not err in finding that it did not provide a basis for reviewing the ALJ's decision.

Plaintiff further argues that the Appeals Council erred because it did not explicitly state that it reviewed the entire record.  Docket No. 13 at 12-13; *see* 20 C.F.R. § 404.970(b).  The Appeals Council did, however, state that the new evidence did not provide a basis for changing the ALJ's determination.  R. at 2.  This statement implies that the Appeals Council reviewed the rest of the record; otherwise, it would have been unable to determine the import of the new evidence with respect to the ALJ's determination.  The Court declines to presume that the Appeals Council would

misleadingly imply that it had reviewed the full record without having done so.  *See Hackett*, 395 F.3d at 1173.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is AFFIRMED.

DATED September 20, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

18